UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRENDA SHAW, INDIVIDUALLY<br>AND AS NEXT FRIEND TO CARL<br>MCCALISTER, A MINOR, LAKISHA<br>MCCALISTER, AND JOHN<br>MCCALISTER | ) ) ) ) ) | Civil Action No.  SA-06-CA-751-XR |
| **Plaintiffs,** | ) ) ) | |
| VS. | ) ) | |
| PHIL HARDBERGER, MAYOR, CITY<br>OF SAN ANTONIO IN HIS OFFICIAL<br>CAPACITY, CITY OF SAN ANTONIO,<br>SAPD OFFICERS, K. ALLEN, R.<br>LUNA, JASON J. BRISENO, CASEY<br>CAMPOS, GERALD FULLER, AND<br>DAVID MCELWAIN, INDIVIDUALLY<br>AND IN THEIR OFFICIAL<br>CAPACITIES | ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

**ORDER**

On this day the Court considered motions to dismiss filed by Defendants Phil Hardberger,

Mayor of the City of San Antonio ("Mayor Hardberger"), the City of San Antonio ("City"), Officer

Katie Allen, Officer Ryan Luza, Officer Jason Briseno, Officer David McElwain, Officer Casey

Campos, and Officer Gerald Fuller pursuant to Federal Rules of Civil Procedure 12(b)(6) (Docket

Nos. 6 & 7).  The motions to dismiss are GRANTED IN PART AND DENIED IN PART.  The

Court will postpone ruling on motions to dismiss certain claims pending receipt of Plaintiffs' Rule

7 replies.

## I. Factual & Procedural Background

Brenda Shaw alleges that on May 14, 2006, she and her family were preparing a meal for a Mother's Day celebration.[1]  She claims that the youngest child, Carl, was wrapping presents for her when a sibling argument ensued.  During the argument, Carl and John began physically fighting just inside the front door to the home.  The noise and screaming prompted Brenda's husband, Julius Walker, to place a 9-1-1 emergency call to the police.  According to Brenda, the altercation between the brothers had stopped by the time the police arrived.  At the time that police arrived, John was standing near the fence inside the yard, while Carl was in his room in the house.  According to Brenda, one of the defendant police officers, identified as Officer Casey Campos, approached John and told him to "calm down."  At the same time, Brenda, Carl, and Lakisha came outside of the house.  Brenda alleges that Carl screamed at the police as he witnessed them grab his brother, John, and force him to the ground.[2]  Brenda claims that as Carl continued to question the Officers about their actions against John, several unidentified Officers "grabbed [Carl], threw him to the ground, choked him by the neck, lifting him off his feet, to near unconsciousness and handcuffed him."[3] (Docket No. 1, ¶ 23).  Brenda then alleges that both John and Carl were taken outside of the fence and placed on the ground  next to two patrol units.

_____

[1]Brenda Shaw is a single mother head of household with four children.  She is the natural mother of John McCalister, 19, Lakisha McCalister, 18, Simona McCalister, 18 (Lakisha and Simona are twins), and Carl McCalister, 15.  Simona McCalister is not a party to this case.

[2]Brenda did not specifically identify which Officers she witnessed forcing John McCalister to the ground other than Officer Campos.

[3]Defendants specifically deny these allegations.  (Docket No. 4, ¶ 23)

Brenda alleges that she and Lakisha were "attacked" inside the gate of their home.[4] According to Brenda's account, several unidentified police officers responded to Lakisha's cursing at them by entering the yard and approaching her.  Lakisha then "began backing up because [Officer Katie] Allen was swinging at her with closed fist. [Lakisha] was attempting to keep herself from being hit in the face.  She put up her arms to her face to block . . . Defendant Allen coming at her. After being handcuffed but still with face and upper torso . . . in the dirt, the police officer then began beating [Lakisha] in the back of the head and neck with her [Allen's] fists and pulling her by her hair."[5] (Docket No. 1, ¶ 27).  While being subdued, Lakisha's shirt was torn off and she suffered several injuries, including a busted lip and lacerations to her face, breast and upper torso.

Brenda alleges that she was also confronted by Officers in her yard and forced to the ground on the cement sidewalk.[6]  In her Complaint, she stated that she could not identify the Officers who allegedly beat her.  She suffered lacerations, abrasions and contusions to both knees and arms. Subsequently, Brenda and Lakisha were taken to the hospital in separate vehicles, and then to the magistrate to be booked and jailed.  Plaintiffs were required to secure the services of a bonding company to post bond and costs.  According to the Plaintiffs, Brenda Shaw was charged with Misdemeanor Interfering with the Duties of a Public Official, Lakisha McCalister was charged with Misdemeanor Interfering with the Duties of a Public Official and Felony Assault on a Public Official, and Carl McCalister was charged with Resisting Arrest.  Plaintiffs allege that all the Officers filed false official police reports regarding the incident, which resulted in malicious

---

[4]Defendants specifically deny this allegation. (Docket No. 4, ¶ 26)

[5]Defendants specifically deny these allegations.  (Docket No. 4, ¶ 27)

[6]Defendants specifically deny this allegation.  (Docket No. 4, ¶ 29)

prosecution by the Bexar County District Attorney.

## II. Plaintiffs' Allegations

Plaintiffs allege that the Officers, acting individually and in concert with each other and Defendant City of San Antonio, deprived Plaintiffs of their clearly established constitutional rights, in violation of 42 U.S.C. §§ 1981, 1983, and 1985(3). Plaintiffs allege that the Officers' actions constituted violations of Plaintiffs' Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights under the Constitution. Plaintiffs allege alternatively that Defendant City of San Antonio was guilty of common law negligence which proximately resulted in the injuries and damages sustained by Plaintiffs. Plaintiffs further allege that Defendant City of San Antonio is guilty of negligence in the hiring, training, supervising and maintaining of public servants. Plaintiffs allege that Defendant City of San Antonio is grossly negligent in entrusting deadly firearms and weapons to such inadequately trained officers. Plaintiffs allege that the Officers are liable for the intentional torts of assault and false imprisonment.

## III. Legal Analysis

### A. Standard of review for a motion to dismiss.

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The issue is not whether the plaintiff will prevail but whether the plaintiff is entitled to pursue his complaint and offer evidence in support of his claims. *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996). The Court may not look beyond the pleadings in ruling on the motion. *Baker*, 75 F.3d at 196. Motions to dismiss are disfavored and are rarely granted. *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir.

-4-

1999). Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 164 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). However, the Court does not accept conclusory allegations or unwarranted deductions of fact as true. *Tuchman v. DSC Commc'ns Corp*., 14 F.3d 1061, 1067 (5th Cir. 1994).

**B.      The motion to dismiss the 42 U.S.C. § 1981 claims against Officers K. Allen and C. Campos is DENIED.  The Court will postpone ruling on the motion to dismiss the 42 U.S.C. § 1981 claims against Officers R. Luna, J. Briseno, G. Fuller and D. McElwain pending  receipt of Plaintiffs' Rule 7 reply.**

Plaintiffs claim that the City and the Officers violated section 1981(a), which provides that all persons within the United States "shall have the same right in every State . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." Section 1981(c) protects those rights "against impairment by non-governmental discrimination and impairment under color of state law." To establish a Section 1981 claim, a plaintiff must show (1) that he is a member of a racial minority, (2) that the defendant acted with an intent to discriminate against him on the basis of his race, and (3) that the defendant's race discrimination concerned one or more of the protected activities enumerated in section 1981(a). *Felton v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002); *see also Molette v. The City of Alexandria*, No. CV040501A, 2005 WL 2445432, *6 (W.D. La. September 30, 2005) (stating the elements when discussing a section 1981 claim involving police misconduct).

Though section 1981 "on its face relates primarily to racial discrimination in the making and

enforcement of contracts,"[7] some other Circuits have held that racially motivated arrests and searches made in the absence of probable cause come within *Felton*'s third requirement because they fall within the "equal benefits" and "like punishments" clauses of Section 1981(a).  *See Alexis v. McDonald's Restaurants of Mass., Inc.*, 67 F.3d 341, 348 (1st Cir.1995); *see Cunningham v. Sisk*, 136 Fed. Appx. 771, 775 (6th Cir. 2005) (noting the split among the Circuits on the issue but refusing to adopt a position); *Mahone v. Waddle*, 564 F.2d 1018, 1028 (3d Cir.1977).  In *Waddle*, the Third Circuit concluded that "[d]espite the sparsity of precedent, a natural and commonsense reading of the statute compels the conclusion that section 1981 has broad applicability beyond the mere right to contract." 594 F.2d at 1028.  The Third Circuit based this conclusion on a textual reading of the statute:

> Plaintiffs have alleged that the City's police officers, clothed with the authority of the City and the state and motivated by racial bias, verbally and physically abused them, falsely arrested them, and gave false testimony against them. It seems to us that plaintiffs have in effect alleged that because they are black they were subjected to officially inflicted "punishment, pains, (and) penalties" other than those to which white persons are subject. In alleging that because of their race they were arrested without probable cause or warrant and that they were convicted by false testimony of crimes they did not commit, plaintiffs have in effect charged that the City's officers denied them the same "full and equal benefit of . . . laws and proceedings for the security of persons . . . as is enjoyed by white persons." We therefore believe that the facts alleged fall within the broad language of both the equal benefits and like punishment clauses of section 1981.

*Id*. at 1028.  Based on *Waddle*, it would appear that Plaintiffs have alleged a valid section 1981 claim

_____

[7] *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459 (1975).  In *Waddle*, the defendant interpreted this statement in *Johnson* to mean that section 1981 can reach no further than the right to contract.  In rejecting this argument, the Third Circuit stated, "We do not believe, however, that the [United States Supreme] Court intended to read the other clauses of section 1981 out of existence and we do not consider ourselves bound by the Court's dictum." 564 F.2d at 1027 n.13.  "The [Civil Rights] Act [of 1866] was not intended to have merely limited effect; rather, it was to eradicate all discrimination against blacks and to secure for them full freedom and equality in civil rights." *Id.* at 1028. Thus, section 1981 by its terms is directed against racially motivated discrimination.

against the City and Officers.

A review of relevant case law indicates that Plaintiffs must carry a heavy burden in order to overcome summary judgment on this claim. For example, in *Brissett v. Baltimore Police Department*, the Fourth Circuit held that the plaintiff must prove specific facts "sufficient to establish intentional discrimination" to state a section 1981 claim that will survive summary judgment in civil rights cases involving police misconduct, excessive force, and wrongful death (collectively "police misconduct cases"). No. 97-6898, 1998 WL 195945, *3 (4th Cir. April 6, 1998). In *Brissett*, the Fourth Circuit affirmed summary judgment for the defendant on the section 1981 claim because the plaintiff "provided nothing more than conclusory allegations of discrimination" and failed to demonstrate that the defendant officer's actions were "racially motivated." *Id*. In *Glass v. Village of Sauk*, the Seventh Circuit stated that plaintiff carries the "burden on proving racial animus" when asserting a section 1981 claim in police misconduct cases. No. 94-2782, 1996 WL 149342, *2 (7th Cir. March 28, 1996). According to the Seventh Circuit, a plaintiff can prove racial animus either through "direct evidence" or through "a theory of disparate treatment by showing less favorable treatment because of race." *Id*. However, proceeding under a disparate treatment theory requires that "a plaintiff come forward with some type of comparative evidence showing that members of different races are treated differently" by the police. *Id*. The mere fact that the alleged victim is a different race than the defendant is not enough to establish racial animus. *Id*.

The Fifth Circuit has yet to definitively rule on whether a section 1981 claim is available to plaintiffs in police misconduct cases. In a race discrimination case involving a state employer, the Fifth Circuit has held that "when a state employee seeks to hold an individual fellow state employee

liable in damages for violation of § 1981, such claim must also be pursued under the remedial provisions of § 1983." *Felton*, 315 F.3d at 482. Although *Felton* involved the "interference with contract" prong of section 1981, the holding appears to be applicable to all violations of section 1981. *Felton* is clear that the qualified immunity defense is available in section 1981 cases. *Id.* at 482.

Very few district courts in the Fifth Circuit have analyzed section 1981 claims involving police misconduct. The Northern District of Texas implied that a plaintiff could prevail on a section 1981 claim involving police misconduct based on disparate treatment—"i.e. that he was treated differently [by the police] than someone else similarly situated." *Jacobson v. City of N. Richland Hills*, No. 4:04-CV-421-Y, 2006 WL 1317014, *5 (N.D. Tex. May 15, 2006); *see also Stumpf v. City of Waxahachie*, No. 3:04-CV-946-M, 2004 WL 2413306, *3 (N.D. Tex. Oct. 26, 2004). *In Molette*, the Western District of Louisiana implied that a plaintiff could prevail on a section 1981 claim involving police misconduct if the police officer "intended to discriminate against him [the plaintiff] because he was a member of a racial minority." 2005 WL 2445432, at *6.

Plaintiffs' section 1981 claim is one paragraph long and does not include a statement that Defendants' actions were motivated by intentional discrimination and racial animus. Complaint, ¶ 53. Furthermore, Plaintiffs fail to provide specific factual support identifying which Officers, other than Officers C. Campos and K. Allen, were involved in the physical altercations with Plaintiffs. The Court interprets the Officers' motion to dismiss as asserting a qualified immunity defense to Plaintiff's section 1981 claim, and the Court finds that Plaintiffs' Complaint lacks the specificity to overcome this defense as to Officers R. Luna, J. Briseno, G. Fuller and D. McElwain. *See Meadours v. Ermel*, No. 05-20764, 2007 WL 968124, * 3 (5th Cir. April 2, 2007) (Criticizing the district court

for "considering the officers' actions collectively" and stating that "we have consistently examined the actions of defendants individually in the qualified immunity context").

The Court ORDERS Plaintiffs to file a Rule 7 reply to Defendant's qualified immunity defense to the 1981 claims against Officers R. Luna, J. Briseno, G. Fuller and D. McElwain. *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996); *See Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999)("Trial courts ought routinely require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses."); *see also Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2004) ("Heightened pleading in qualified immunity cases requires that plaintiffs rest their complaint on more than conclusions alone and plead their case with precision and factual specificity.").  In response to a defense of qualified immunity, "the court may, in its discretion, insist that a plaintiff file a [Rule 7] reply tailored to an answer pleading the defense of qualified immunity." 47 F.3d at 1433-34; *see also Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir.2004). Defeating a defendant's defense under "the immunity doctrine will ordinarily require such a reply," and is properly ordered "when greater detail might assist." *Schultea*, 47 F.3d at 1434.

The Court will postpone ruling on the motion to dismiss Plaintiffs' section 1981 claims against Officers R. Luna, J. Briseno, G. Fuller and D. McElwain pending receipt of Plaintiffs' Rule 7 reply.  However, since the Plaintiffs describe allegations against Officers C. Campos and K. Allen with factual specificity, the motion to dismiss the 42 U.S.C. § 1981 claims against Officers C. Campos and K. Allen is DENIED.

**C.     The motion to dismiss the 42 U.S.C. § 1983 official capacity claims against Officers K. Allen, R. Luna, J. Briseno, C. Campos, G. Fuller and D. McElwain and the official capacity claims against Mayor Hardberger are GRANTED.**

Suing a government official in his official capacity is another way of pleading against the

entity of which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  In other words, an official capacity suit is to be treated as a suit against the entity. *Id.*  "An official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 171.  Because the City has also been named as a party, no purpose is served by allowing Plaintiffs' duplicative section 1983 official capacity claims against Officers K. Allen, R. Luna, J. Briseno, C. Campos, G. Fuller and D. McElwain or claims against Mayor Hardberger in his official capacity to proceed. Defendants' motion to dismiss Plaintiffs' section 1983 claims against Officers K. Allen, R. Luna, J. Briseno, C. Campos, G. Fuller and D. McElwain in their official capacity and claims against Mayor Hardberger in his official capacity is GRANTED.

**D.      The motion to dismiss the 42 U.S.C. § 1983 claims against Officers K. Allen and C. Campos is DENIED.  The Court will postpone ruling on the motion to dismiss the 42 U.S.C. § 1983 claims against Officers R. Luna, J. Briseno, G. Fuller and D. McElwain pending receipt of Plaintiffs' Rule 7 reply.**

Officers K. Allen, R. Luna, J. Briseno, C. Campos, G. Fuller and D. McElwain move to dismiss Plaintiffs' section 1983 claims against them in their individual capacities by asserting qualified immunity.  Public officials acting within the scope of their official duties are shielded from civil liability by the qualified immunity doctrine. *Harlow v. Fitzgerald*, 457 U.S. 800, 815-19 (1982). Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818.

In order to establish that the defendants are not entitled to qualified immunity, plaintiffs must satisfy a two-part test: (1) under existing law, does the plaintiff allege a violation of an actual, clearly established constitutional or federal statutory right; and (2) if so, was the defendant's conduct

objectively unreasonable in the light of clearly established law at the time of the conduct.  *Felton*, 315 F.3d at 473; *Hare v. City of Corinth, Miss.*. 135 F.3d 320, 325 (5th Cir. 1998).

Qualified immunity "serves to shield a government official from civil liability for damages based upon performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 456 (5th Cir. 2001).   To that end, where a defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden "to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law."  *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997).  Courts in the Fifth Circuit do "not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." *Id.*

The second prong "focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or of the factual setting in which it took place." *Pierce*, 117 F.3d at 872.  A "defendant's acts are . . . objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson*, 245 F.3d at 457.

Plaintiffs argue that Officers' use of excessive force was an unreasonable seizure, thereby depriving Plaintiffs of their constitutional rights to be free from unreasonable seizures guaranteed under the Fourth and Fourteenth Amendments of the U.S. Constitution.   A claim that a law enforcement officer used excessive force in the course of an arrest is analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989).   An excessive-use-of-force claim

-11-

requires a plaintiff to prove 1) an injury, which 2) resulted directly and solely from the use of force that was clearly excessive to the need, and the excessiveness of which was 3) objectively unreasonable. *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996). This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers of others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

In *Ikerd v. Blair*, plaintiffs brought a 1983 action on behalf of their child claiming that a police officer used excessive force against the child during an arrest of her father. 101 F.3d at 432. During the arrest, the police officer jerked the child out of her chair and dragged her into the kitchen, which resulted in her re-injuring a broken arm. *Id.* In determining the first and second elements required to establish an excessive force claim, the court maintained that "the extent of the injury suffered by a plaintiff is one factor that may suggest whether the use of force was excessive in a particular situation." *Id.* at 434. In analyzing the third element, the court reasoned that "in gauging the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for that force." *Id.* In overruling the district court's judgment as a matter of law for the officer, the Fifth Circuit held that the evidence presented was sufficient for a reasonable jury to conclude that the officer used objectively unreasonable force against the plaintiff. *Id.* at 435.

In *Meaux v. Williams*, the Fifth Circuit reversed the district court's grant of summary judgment, holding that a genuine issue of material fact exited as to whether the police officer used excessive force when arresting the plaintiff. 113 Fed. Appx. 593, 595 (5th Cir. 2004). In his

-12-

Complaint, "Meaux alleged that when he answered the door, he was pulled out of his house by Williams and then handcuffed. As Meaux lay across his Jacuzzi . . . Williams smashed his fist into his face, breaking three of Meaux's teeth and opening a cut on his lip that required stitches." *Id.*  In this case, Carl claims that he was choked by the neck until he was nearly unconscious, lifted off his feet, and then thrown to the ground.  Lakisha claims that an officer swung at her with a closed fist, knocked to the ground, and then beaten in the back of the head and neck with fists and pulled by the hair.  Lakisha claims that he suffered a busted lip and lacerations to her face, breast and upper torso. Apparently, these injuries required hospitalization.

In *Heflin v. Town of Warrenton*, the United States District Court for the Eastern District of Virginia overruled defendants' motion to dismiss a 1983 excessive force claim.  944 F. Supp. 472 (E.D. Va. 1996).  After a domestic disturbance between brothers, several police officers responded to a residence and arrested several family members. *Id.* at 473.  While effectuating the arrest, the police officers allegedly used excessive force against the plaintiff when he "proceeded to drag Heflin, by the handcuffs, up the concrete steps to the parking lot. In the course of this, Heflin suffered abrasions to his stomach and face, for which he subsequently sought medical treatment." *Id.* at 474.

In *Harper v. Harris County, Texas*, the Fifth Circuit concluded that allegations that an officer grabbed plaintiff by the throat and cut off her air, told her to drop her son, and threw her to the ground, resulting in a sore throat and a bruised knee, were sufficient to withstand a summary judgment seeking dismissal of an excessive force claim. 21 F.3d 597, 599 (5th Cir. 1994).  In *Harper*, the Fifth Circuit applied the test for excessive force in effect prior to the Supreme Court case of *Hudson v. McMillian*, 503 U.S. 1 (1992), which eradicated the requirement of showing

-13-

"significant" injury in order to prove an excessive force claim. *Id.* at 601. Therefore, since a case involving analogous facts survived a motion for summary judgment under a heightened standard for proving excessive force, the current Plaintiffs would meet their burden to overcome a motion to dismiss by alleging similar facts.

The facts of *Ikerd*, *Meaux*, *Heflin,* and *Harper* share similarities with the current case. Plaintiffs' facts, as alleged, suggest that Defendant Campos and other unidentified officers forced John to the ground without being provoked. Plaintiffs' facts also allege that several unidentified officers threw Carl to the ground and choked him by the neck. Plaintiffs further allege facts that Defendant Allen swung with a closed fist at Lakisha's face and handcuffed Lakisha in a manner which left her with various injuries that required medical attention at the hospital. Finally, Plaintiffs allege that Brenda was forced to the ground by several unidentified officers, which resulted in various injuries that required medical attention at the hospital. It could be reasonably inferred from Plaintiffs' pleaded facts, viewed in a light most favorable to the non-moving party, that Plaintiffs sustained injuries, which resulted directly and solely from the use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable, thus establishing the elements for an excessive force claim. Apparently, the injuries alleged by Plaintiffs are more than de minimis. *See Montes v. Ransom*, No. 05-11206, 2007 WL 625002, *1 (5th Cir. Feb. 22, 2007).

The United States District Court for the District of Columbia reasoned in *Saddler v. D'Ambrosio* that the credibility issues and conflicting factual accounts in excessive force cases should not be resolved in a motion to dismiss. *Saddler v. D'Ambrosio*, 759 F. Supp. 4, 8 (D. D.C. 1990). The Court maintained that if the plaintiff has alleged facts that, if true, indicate that a police officer's actions were objectively unreasonable and violated the plaintiff's Fourth Amendment rights,

-14-

those factual allegations should overcome a motion to dismiss, regardless of whether the plaintiff's version of the facts will ultimately prevail at the summary judgment or trial stage. *Id*.

If the facts alleged are true, Officers Campos and Allen's actions may have violated the standard for excessive force under the Fourth Amendment.  However, Plaintiffs fail to allege specific facts showing that Defendants R. Luna, J. Briseno, G. Fuller and D. McElwain were involved in the physical altercations with Plaintiffs. *See Meadours*, 2007 WL 968124, * 3 (Criticizing the district court for "considering the officers' actions collectively" and stating that "we have consistently examined the actions of defendants individually in the qualified immunity context"); *see Bias v. Lundy*, 188 Fed. Appx. 248, 250 (5th Cir. 2006) ("Because there was no evidence that Guillory, Lundy, Malone or Ryan were involved in the alleged use of excessive force, the magistrate judge properly granted judgment in their favor. The evidence against deputies Gaddy and King, however, did support the claim").

The Court ORDERS Plaintiffs to file a Rule 7 reply to Defendants' qualified immunity defense to the 1983 individual capacity claims against Officers R. Luna, J. Briseno, G. Fuller and D. McElwain for use of excessive force.  The Court will postpone ruling on the motion to dismiss Plaintiffs' section 1983 individual capacity claims against the Defendant Officers R. Luna, J. Briseno, G. Fuller and D. McElwain pending receipt of Plaintiffs' Rule 7 reply.  However, since the Plaintiffs describe allegations against Officers C. Campos and K. Allen with factual specificity, the motion to dismiss the 42 U.S.C. §1983 claims against Officers C. Campos and K. Allen is DENIED.

**E.      The motion to dismiss the 42 U.S.C. § 1983 claims against the City is DENIED.**

In order to properly state a section 1983 claim against Defendant City of San Antonio,

Plaintiffs must identify (1) an official policy or custom (2) of the city's policymaker (3) that caused[8]

(4) the plaintiffs to be subjected to a deprivation of a constitutional right.  *Palmer v. City of San*

*Antonio*, 810 F.2d 514, 516 (5th Cir. 1987)(quoting *Grandstaff v. City of Borger, Texas*, 767 F.2d

161, 169 (5th Cir. 1985)).   Municipalities are not liable for the constitutional torts or their

employees, unless those employees act pursuant to official policy.  *Monell*, 436 U.S. at 663 n.7

(1978)(stating the doctrine of *respondeat superior* is not a basis for rendering municipalities liable

under section 1983 for the constitutional torts of their employees).  Defendant City moves to dismiss

Plaintiffs' claims on the grounds that Plaintiffs have failed to allege any law, statute or any specific

policy, practice or custom maintained by the City that caused Plaintiffs' alleged constitutional

deprivations.

　　　Plaintiffs must first allege facts sufficient to show, if proven, that Defendant City of San

Antonio, through its policy makers, formulated or had constructive knowledge of an official policy

that sanctioned or encouraged a deprivation of rights protected by the Constitution.  *See Webster v.*

*City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).  Official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and
> promulgated by the municipality's lawmaking officers or by an official to whom the
> lawmakers have delegated policy-making authority; or
> 2. A persistent, widespread practice of city officials or employees, which, although
> not authorized by officially adopted and promulgated policy, is so common and well
> settled as to constitute a custom that fairly represents municipal policy. Actual or
> constructive knowledge of such custom must be attributable to the governing body

---

[8]The causation requirement of a properly pleaded § 1983 claim is also variously described as the "moving force" or "affirmative link" requirement.  *See Grandstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir. 1985); s*ee also Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978) (clarifying the causal requirement by holding that a governmental unit's policy or custom must be "the moving force of the constitutional violation in order to be held liable under a § 1983 claim).

of the municipality or to an official to whom that body had delegated policy-making authority.

*Id.*  Under the first definition of official policy, Plaintiffs contend that the City approved and adopted its employees' actions.  This was accomplished by approving the Defendants K. Allen, R. Luna, J. Briseno, C. Campos, G. Fuller and D. McElwain's alleged use of excessive force after reviewing their conduct and exonerating them. Assigning section 1983 liability to a municipality in this manner is referred to as the "ratification theory."  *See Milam v. City of San Antonio*, 113 Fed. Appx. 622, 626 (5th Cir. 2004).

The Supreme Court has clarified when a decision by a government official might be enough to establish an unconstitutional municipal policy.  *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). The Court held:

> when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies.  If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Id*.  In *Harris v. Victoria Independent School District*, there was evidence to suggest that the plaintiff school teacher had been reassigned to another school by the defendant school district in retaliation for expressing views about the effectiveness of a school principal.  168 F.3d 216, 219 (5th Cir. 1999).  The plaintiff filed a grievance against the superintendent with the school board.  *Id*.  The Fifth Circuit held that the school board's *post hoc* review and approval of action already taken by the superintendent was representative of official policy.  *See id.* at 225 (stating that "[t]he Board of Trustees' action in affirming Superintendent Brezina's decision to transfer the Plaintiffs was an act that may fairly be said to represent official policy because of the Board's status as a policymaker").

There is no indication from any of these cases that ratification of a subordinate's action by a final policymaker *must* take place before or during the implementation of that decision in order to hold a municipality liable under section 1983.

Under the second definition of policy, Plaintiffs allege that Defendant City has or should have actual or constructive knowledge of the persistent, widespread use of excessive force by police officers that has become so common and well settled as to constitute a custom that fairly represents municipal policy. *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984). "To demonstrate governmental policy or custom under §1983, a plaintiff must at least show: a pattern of similar incidents in which citizens were injured and endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force." *Paz v. Weir*, 137 F. Supp.2d 782, 799 (S.D. Tex 2001). Sufficiently numerous prior incidents of official misconduct may tend to prove the existence of the custom and acceptance of that custom by municipal policymakers. *Gonzales v. Westbrook*, 118 F. Supp.2d 728, 734 (W.D. Tex. 2000). Constructive knowledge of a custom by the policymaker "may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities, and official duty of responsible policymakers to be informed, or combinations of these." *Pineda v. City of Houston*, 291 F.3d 325, 330 n.15 (5th Cir. 2002) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987)).

Plaintiffs maintain that the internal affairs section of the San Antonio Police Department has received hundreds of complaints involving the use of excessive force by police officers without ever

having taken disciplinary action.[9]  This has resulted in a failure to supervise, discipline, counsel, or otherwise control police officers who are known or should be known to engage in the use of excessive force.  In *Pineda*, the Fifth Circuit held that 13 incidents of misconduct by Houston Police Officers was legally insufficient to prove a that a custom existed of which the City of Houston should have had constructive knowledge.  *Pineda*, 291 F.3d at 329.  In contrast, Plaintiffs allege that the City has received hundreds of complaints.  In order to survive summary judgment on this claim, Plaintiffs will be required to produce evidence of the date, the nature, and the City's allegedly inadequate response to these complaints.  For purposes of this motion to dismiss, Plaintiffs have alleged sufficient facts to show, if proven, that the policy requirement for municipal liability under section 1983 is met under either definition of policy.

Defendant City next argues that Plaintiffs have failed  to allege sufficient facts to show that any policy or custom maintained by the City was the "moving force" behind the deprivation of Plaintiffs' constitutional rights.  Plaintiffs allege that the City "through its police department's administrative staff, Internal Affairs Division and SAPD Chief's Citizen Action Review Board, consistently fails and refuses, and has failed and refused, to conduct impartial investigations into this and other incidents of reported excessive force and filing of false police reports resulting in prosecutions of the Plaintiffs and other citizens who dare complain or attempt to ensure their constitutional rights."[10]  When the facts alleged are viewed in a light most favorable to the non-movant, it may be inferred that Defendants used excessive force with the knowledge that no

---

[9]Plaintiffs do not indicate the time period in which these complaints were received or what type of police misconduct was involved.

[10]Complaint, ¶ 4.

disciplinary action would be taken against them by the Police Department.  This is sufficient to allege that Defendant City of San Antonio's policy was the "moving force" behind the violation. *See Grandstaff v. City of Borger*, 767 F.2d 161, 170 (5th Cir. 1985) ("Where police officers know at the time they act that their use of deadly force in conscious disregard of the rights and safety of innocent third parties will meet with the approval of city policymakers, the affirmative link/moving force requirement is satisfied.").

"It is clear that a municipality's policy of failing to train its police officers can give rise to § 1983 liability." *Pineda,* 291 F.3d at 331 (quoting *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000)).  To establish the City's liability under a failure to train theory, Plaintiffs must show:  (1) inadequate training procedures; (2) inadequate training caused the police officer to use excessive force; and (3) the deliberate indifference of municipal policymakers.  *Id*. at 331-32.  "[T]he focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform.  The inadequacy of the training must be closely related to the injury."  *Id.* at 332.  Again dismissal is not appropriate when evidence might be adduced showing that a police officer has received no or inadequate training in handcuff policies, offenders' rights, detainee relations, or Fourth Amendment protections.[11]  Plaintiff alleges that Defendants K. Allen, R. Luna, J. Briseno, C. Campos, G. Fuller and D. McElwain received no or inadequate training.  Similar to Plaintiff's "policy or custom" claim, the Court declines to dismiss the failure to train claim.  The motion to

---

[11]In order to survive a motion for summary judgment, Plaintiffs will need to move beyond unsupported factual allegations and "present evidence concerning the substance of the training and supervision."  *Jones v. Pillow*, 189 Fed. Appx. 304, 305-06 (5th Cir. 2006).

dismiss the section 1983 claims against the City is DENIED.[12]

Finally, the City argues that Plaintiffs have failed to sufficiently allege that any of their constitutional rights were violated. It has already been determined that Plaintiffs have alleged sufficient facts to show, if proven, that there may have been deprivations of clearly established constitutional rights.

**F.      The motion to dismiss the Eight Amendment claims against all Defendants is GRANTED.**

Plaintiffs allege that the Defendants' actions constitute cruel and unusual punishment in violation of the their Eighth Amendment rights. The Eighth Amendment claim does not apply in this case because only those persons convicted of a crime may invoke its protection. *Baker*, 75 F.3d at 199. Plaintiffs do not have claims against Defendants for cruel and unusual punishment. The motion to dismiss these claims is GRANTED.

---

[12]The Court finds that Plaintiffs' *Monell* claims against the City satisfy the notice pleading requirements of Rule 8(a). *See Wayne v. City of San Antonio*, No. SA-06-CV-551-XR, 2006 WL 3487022, *7 (W.D. Tex. Nov. 30, 2006) (holding that even under the liberal notice pleading requirements of Rule 8(a), plaintiffs must still adequately describe the factual predicate for their *Monell* claims); *see Eschen v. League City, Tex.*, No. 00-20059, 2000 WL 1468838, *1 (5th Cir. Sept. 8, 2000) (holding that in order to survive a motion to dismiss, "the allegations of a [municipal] policy or custom and its relationship to the constitutional violation cannot be conclusory but must contain specific facts") (citing *Spiller v. City of Texas City*, 130 F.2d 162, 167 (5th Cir. 1997). The question of whether Plaintiffs' *Monell* claims can survive a motion to dismiss is distinct from the question of whether those claims can survive summary judgment. *See Riley v. Jackson County Sheriff's Dept.*, 202 Fed. Appx. 705, 706 (5th Cir. 2006) ("Riley's conclusional assertion that there was no official policy governing the use of less lethal munitions, or that the written use-of-force policy in place did not govern the same, is not sufficient to create a material factual dispute . . . . Similarly, Riley's conclusional allegation that the appellants are liable because they routinely engage in and are sued for using excessive force, as evidenced by the numerous § 1983 lawsuits filed against them, is insufficient") (internal citations omitted). At the summary judgment stage, Plaintiffs will be required to produce some evidence to support their factual allegations regarding the existence of a municipal policy or custom.

**G.    The motion to dismiss the 42 U.S.C. § 1985(3) claims against all Defendants is GRANTED.**

Plaintiffs allege that Defendants K. Allen, R. Luna, J. Briseno, C. Campos, G. Fuller and D. McElwain conspired to deprive Plaintiffs of their constitutional rights to due process and equal protection under the law in violation of 42 U.S.C. § 1985(3).   To maintain a claim under section 1985(3), a plaintiff must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by racial animus." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n. 12 (5th Cir.2001) (quoting *Wong v. Stripling*, 881 F.2d 200, 202-3 (5th Cir.1989)).   Section 1985(3) conspiracy claims are subject to the qualified immunity defense. *See Sullivan v. County of Hunt, Tex.*, 106 Fed. Appx. 215, 220 (5th Cir. 2004); *see Green v. Tilley*, No. 2:04-CV-0819, 2006 WL 220847, *4 (W.D. La. Jan. 23, 2006).

The Fifth Circuit considers a police department and its officers to be a single legal entity that is incapable of conspiring with itself.   *Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997); *Villaneuva v. San Marcos Indep. Sch. Dist.*, No. A-05-CA-455 LY, 2006 WL 2591082, *8 (W.D. Tex. Sept. 7, 2006).   The Fifth Circuit and several district courts within the Circuit have applied this "intracorporate conspiracy" doctrine to entities other than corporations. *See, e.g., Thompson*, 979 F. Supp. at 511 (Galveston Police Department and its employees constitute single legal entity); *Baldwin v. University of Tex. Medical Branch at Galveston*, 945 F. Supp. 1022, 1034

-22-

(S.D. Tex. 1996) (medical school and its employees); *Hilliard*, 30 F.3d at 653 (school board and its members); *Hankins v. Dallas Indep. Sch. Dist.*, 698 F. Supp. 1323, 1330 (N.D. Tex.1988) (high school and its officials).    Plaintiffs' section 1985(3) conspiracy claim fails because of the intracorporate conspiracy doctrine.  Consequently, Defendants motion to dismiss the section 1985(3) conspiracy claim against the City and Officers K. Allen, R. Luna, J. Briseno, C. Campos, G. Fuller and D. McElwain is GRANTED.

**H.      The motion to dismiss state law constitutional claims against Officers K. Allen, R. Luna, J. Briseno, C. Campos, G. Fuller and D. McElwain and the City is GRANTED.**

Plaintiffs bring suit against Defendants City of San Antonio and Officers K. Allen, R. Luna, J. Briseno, C. Campos, G. Fuller and D. McElwain for pendant state constitutional claims.   Under Texas law, the state constitution does not give rise to any private right of action for damages for the violation of state constitutional rights, other than state taking of private property for public use.  *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995). There is no state constitutional tort in Texas.  *Id*.  Only equitable remedies are available for violating  state constitutional rights.  *Id*. Therefore, the Court GRANTS Defendants' motion to dismiss all state constitutional claims seeking damages against all Defendants.

**I.      The motion to dismiss the state law intentional tort claims against the City is GRANTED.**

The City moves for dismissal of Plaintiffs' state law claims against the City arguing that the City is immune and Plaintiffs' claims are not authorized by the Texas Tort Claims Act.  In *Medrano v. City of Pearsall*, 989 S.W.2d 141, 143-44 (Tex. App.–San Antonio 1999, no pet.), the Court of Appeals explained:

Under the doctrine of sovereign immunity, a governmental unit is not liable for the

torts of its officers or agents in the absence of a constitutional or statutory provision creating such liability. *State v. Terrell*, 588 S.W.2d 784, 785 (Tex.1979). The Texas Tort Claims Act ("TTCA") creates a limited waiver of sovereign immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 1997). In order for immunity to be waived under the TTCA, the claim must arise under one of the three specific areas of liability for which immunity is waived, and the claim must not fall under one of the exceptions from waiver. *Alvarado v. City of Brownsville*, 865 S.W.2d 148, 155 (Tex. App.–Corpus Christi 1993), *rev'd on other grounds*, 897 S.W.2d 750 (Tex. 1995). The three specific areas of liability for which immunity has been waived are: (1) injury caused by an employee's use of a motor-driven vehicle; (2) injury caused by a condition or use of tangible personal or real property; and (3) claims arising from premise defects. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 1997). However, the waiver of immunity does not extend to claims arising out of intentional torts. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057 (Vernon 1997).

It is undisputed that the City is a governmental entity to which the doctrine of governmental immunity is applicable. The TTCA waives a city's governmental immunity for damage claims arising from its governmental functions, including police actions, but only to the extent specified in the Act. TEX. CIV. PRAC. & REM. CODE § 101.0215. Plaintiffs' claims are not the type of claims involving a waiver of immunity under the Texas Tort Claims Act, and therefore, the City is immune from suit on Plaintiffs' state law intentional tort claims (assault, battery, false imprisonment). The motion to dismiss the state law intentional tort claims against the City is GRANTED.

**J.      The motion to dismiss the state law intentional tort claims against Officers K. Allen and C. Campos is DENIED.  The Court will postpone ruling on the motion to dismiss the state law intentional tort claims against Officers R. Luna, J. Briseno, G. Fuller and D. McElwain pending receipt of Plaintiffs' Rule 7 reply.**

The City argues that the filing of a suit against a government entity pursuant to the Texas Tort Claims Act ("TTCA") creates an irrevocable election and forever bars suit against any government employees in their individual capacity regarding the same subject matter. TEX. CIV. PRAC. & REM. CODE § 101.106(a). If suit is filed pursuant to the TTCA against a government unit and any of its employees, the employees are entitled to immediate dismissal upon the filing of a motion by the

-24-

government unit. *Id.* In this case, it is clear that the alleged excessive force used by the Officers was intentional. The Court notes that Plaintiffs have not alleged any state law negligence claims against the Officers. Complaint, ¶ 63 (stating that the Officers "intentionally, knowingly, and/or recklessly caused, or threatened to cause, bodily injury to the plaintiffs. The defendants' actions constituted assault"). The Fifth Circuit recently rejected the Officers' section 101.106 argument because the TTCA does not apply to intentional torts. *Meadours*, 2007 WL 968124, *6 ("Furthermore, we find that Texas Civil Practice and Remedies Code § 101.106(a) does not bar Plaintiffs' [excessive force] suit [against the police officers] in this case. That statute, barring suits against governmental employees if plaintiffs bring suit against the governmental unit, does not apply to intentional torts. *See* TEX. CIV. PRAC. & REM. CODE § 101.057(2) (excluding from the entire chapter claims "arising out of assault, battery, false imprisonment, or any other intentional tort")").

The Officers argue that the state law claims against them are barred because they were responding to a 9-1-1 call. Tex. Civ. Prac. & Rem. Code § 101.062 states that the TTCA "applies to a claim against a public agency that arises from an action of an employee of the public agency or a volunteer under direction of the public agency and that involves providing 9-1-1 service or responding to a 9-1-1 emergency call only if the action violates a statute or ordinance applicable to the action." *See Guillen v. City of San Antonio*, 13 S.W.3d 428, 432 (Tex. App.–San Antonio 2000, pet. denied). As discussed previously, the TTCA does not apply to intentional torts, so section 101.062 does not bar the state law intentional tort claims against the Officers. *Guillen* involved negligence claims under the TTCA against paramedics and the city, not intentional tort claims.

Finally, the Officers argue that official immunity bars the state law intentional tort claims against them. Under Texas law, government officials are entitled to immunity from suit arising

under performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *Austin v. Johnson*, 328 F.3d 204, 211 (5th Cir.2003); *see also City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994).  The "good faith" test applied by Texas law in determining official immunity is evaluated under substantially the same standard used for qualified immunity determinations in section 1983 actions. *Meadours*, 2007 WL 968124, *5; *see Mowbray v. Cameron County*, 274 F.3d 269, 280 (5th Cir.2001); *see also City of Lancaster*, 883 S.W.2d at 656 (equating the good faith test to a test of objective legal reasonableness); *but see Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 885 (5th Cir.2004) ("Determining official immunity under state law is distinct from the federal test of qualified immunity because the former focuses solely on the objective legal reasonableness rather than the clearly established inquiry").  Any difference between the qualified immunity standard and the official immunity standard is immaterial for purposes of this motion to dismiss; therefore, the Court will deny the motion to dismiss the state law intentional tort claims against Officers Allen and Campos for the same reasons it denied the motion to dismiss the section 1983 excessive force claims against them.  Plaintiffs' allegations, if true, might establish that the actions of Officers Allen and Campos were not objectively reasonable.  The Court will postpone ruling on the motion to dismiss the state law intentional tort claims against Officers R. Luna, J. Briseno, G. Fuller and D. McElwain pending receipt of Plaintiffs' Rule 7 reply.

**K.    The motion to dismiss the state negligent hiring and negligent training claim against the City is GRANTED.**

The Texas Supreme Court has held that the intentional tort exception of the TTCA cannot be circumvented merely by alleging that the government was negligent in supervising the

employee-tortfeasor. *Delaney v. Univ. of Houston*, 835 S.W.2d 56, 60 (Tex. 1992).  In *Medrano*, the

Court of Appeals affirmed summary judgment on Plaintiffs' negligent hiring and negligent training

in connection with Plaintiff's intentional tort claim against the employee-tortfeasor based on

*Delaney*.  989 S.W.3d at 144-45.  *Medrano* demonstrates that mere allegations of negligence will

not suffice. *Id*  Additionally, negligent hiring and negligent training are areas of liability that have

not been waived by the TTCA.  "[A]llegations of negligent supervision do not satisfy the limited

waiver of immunity" contained within the TTCA. *Univ. of Tex. Health Sci. Ctr. v. Schroeder*, 190

S.W.3d 102, 106 (Tex. App.–Houston [1st Dist.] 2005, no pet.); *accord City of San Antonio v.

Parra*, 185 S.W.3d 61, 64 (Tex. App.–San Antonio 2005, no pet.); *City of Garland v. Rivera*, 146

S.W.3d 334, 338 (Tex. App.–Dallas 2004, no pet.); *Gainesville Mem'l Hosp. v. Tomlinson*, 48

S.W.3d 511, 514 (Tex. App.–Fort Worth 2001, pet. denied); *see also Tex. A & M Univ. v. Bishop*,

156 S.W.3d 580, 583 (Tex. 2005); *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex.

2001). A negligent-training claim alleges the use of "information," which "is not tangible personal

property, since it is an abstract concept that lacks corporeal, physical, or palpable qualities." *Petta*

at 580; *see* TEX. CIV. PRAC. & REM. CODE § 101.021(2).   Therefore, the motion to dismiss the

negligent hiring and negligent training claim against the City is GRANTED.

## L.    The motion to dismiss the exemplary damages claim against Officers K. Allen, R. Luna, J. Briseno, C. Campos, G. Fuller and D. McElwain and the City is GRANTED.

The City moves that plaintiffs' claim for exemplary damages against the City be dismissed

because the City is not liable for such damages. Because punitive damages against a municipality

would in effect punish the taxpayers, a municipality is not liable for such damages. *See City of

Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271(1981). The Supreme Court has held that punitive

-27-

or exemplary damages are not available under section 1983 against a municipality, but are available in a suit against an official personally. *Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985).  Thus, the City's motion to dismiss Plaintiffs' claim for exemplary damages is GRANTED.

### IV.  Conclusion

The motions to dismiss are GRANTED IN PART AND DENIED IN PART (Docket Nos. 6 & 7).

The Court ORDERS Plaintiffs to file a Rule 7 reply to Defendant's qualified immunity defense to the 1981 claims against Officers R. Luna, J. Briseno, G. Fuller and D. McElwain. The Court will postpone ruling on the motion to dismiss Plaintiffs' section 1981 claims against Officers R. Luna, J. Briseno, G. Fuller and D. McElwain pending receipt of Plaintiffs' Rule 7 reply. However, because the Plaintiffs describe allegations against Officers C. Campos and K. Allen with factual specificity, the motion to dismiss the 42 U.S.C. §1981 claims against Officers C. Campos and K. Allen is DENIED.

Defendants' motion to dismiss Plaintiffs' section 1983 claims against Officers K. Allen, R. Luna, J. Briseno, C. Campos, G. Fuller and D. McElwain in their official capacity and claims against Mayor Hardberger in his official capacity is GRANTED.

The Court ORDERS Plaintiffs to file a Rule 7 reply to Defendants' qualified immunity defense to the 1983 individual capacity claims against Officers R. Luna, J. Briseno, G. Fuller and D. McElwain for use of excessive force.  The Court will postpone ruling on the motion to dismiss Plaintiffs' section 1983 individual capacity claims against the Defendant Officers R. Luna, J. Briseno, G. Fuller and D. McElwain pending receipt of Plaintiffs' Rule 7 reply.  However, because the Plaintiffs describe allegations against Officers C. Campos and K. Allen with factual specificity,

-28-

the motion to dismiss the 42 U.S.C. §1983 claims against Officers C. Campos and K. Allen is DENIED.

The motion to dismiss the section 1983 claims against the City is DENIED.  The motion to dismiss the Eight Amendment claims against all Defendants is GRANTED.  Plaintiffs' section 1985(3) conspiracy claim fails because of the intracorporate conspiracy doctrine.  Consequently, Defendants motion to dismiss the section 1985(3) conspiracy claims against all Defendants is GRANTED.

The motion to dismiss all state constitutional claims seeking damages against all Defendants is GRANTED.  The motion to dismiss the state law intentional tort claims against the City is GRANTED.  The motion to dismiss the state law intentional tort claims against Officers K. Allen and C. Campos is DENIED.  The Court will postpone ruling on the motion to dismiss the state law intentional tort claims against Officers R. Luna, J. Briseno, G. Fuller and D. McElwain pending receipt of Plaintiffs' Rule 7 reply.  The motion to dismiss the negligent hiring and negligent training claim against the City is GRANTED.  The City's motion to dismiss Plaintiffs' claim for exemplary damages is GRANTED.

Plaintiffs are ORDERED to file their Rule 7 reply by **May 14, 2007.**

SIGNED this 19th day of April, 2007.


XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE