# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRENDA SHAW, Individually and as next friend to CARL MCCALISTER, A minor, LAKISHA MCCALISTER, and JOHN MCCALISTER | § § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. SA-06-CV-751-XR |
| PHIL HARDBERGER, Mayor, City of San Antonio, in his official capacity, CITY OF SAN ANTONIO, SAPD OFFICERS K. ALLEN, R. LUNA, JASON J. BRISENO, CASEY CAMPOS, GERALD FULLER, and DAVID MCELWAIN, Individually and in their official capacities, | § § § § § § § § § | |
| *Defendants*. | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this day, the Court considered the remaining Defendants' Motion for Summary Judgment (Docket Entry No. 94). Plaintiffs responded beyond the deadline to do so but have sought leave of the Court to accept their late response (Docket Entry No. 96) and to exceed the page limit (Docket Entry No. 99). In accordance with precedent to decide summary judgment motions on the merits of the case, the Court GRANTS Plaintiffs' motion for leave. Since an existing order of the Court establishes the length of dispositive motions and responses at thirty pages, Plaintiffs' motion to exceed the page limit is DISMISSED AS MOOT. Having considered the motion for summary judgment, the evidence before the Court, and the relevant authority, the Court GRANTS Defendants' motion for summary judgment.

**Background**

Plaintiff Brenda Shaw alleges that on May 14, 2006, she and her family were preparing a meal.[1] An argument between her sons, Carl and John, ensued, and they began physically fighting just inside the front door to their home in San Antonio, Texas. The altercation prompted Ms. Shaw's live-in boyfriend, Julius Walker, to place an emergency telephone call to police from a neighbor's home. According to Ms. Shaw, the altercation between the brothers had stopped by the time Defendant Officers Ryan Luza and Casey Campos of the San Antonio Police Department (SAPD) arrived.

The officers were speaking to Mr. Walker in front of the home when John walked outside, and, according to a SAPD Internal Affairs Unit report and Ms. Shaw's complaint, police told John to "calm down." John was bleeding from the head and immediately swore at the officers. The police reports indicate that Luza and Campos were uncertain whether he was the victim or the perpetrator but that his aggressive manner and swearing at the officers prompted them to handcuff him. John struggled with the officers, hooking his foot around the fence as they attempted to move John in the direction of the police vehicle. As they were moving John, his friend Leroy Neal, Jr., exited the home and began to argue with the police. Leroy Neal refused commands to go back inside the house, and the officers handcuffed Leroy. Campos appears to have radioed for assistance. Other officers reported hearing screaming and yelling in the background.

Plaintiff Carl McCalister ran out of the home and began yelling at the officers to leave.

---

[1] Brenda Shaw is a head of household with four children. She is the mother of John McCalister, Lakisha McCalister, Simona McCalister, (Lakisha and Simona are twins), and Carl McCalister. Simona McCalister is not a party to this case. Recent documents have not been filed on behalf of Carl McCalister. The record indicates that John McCalister is now deceased.

Brenda Shaw; her daughter, Plaintiff Lakisha McCalister; and other family members also exited the home. Defendant Officer Gerald Fuller arrived on the scene, and upon seeing the agitated family members and Campos and Luza struggling with two individuals, he radioed for backup. Carl questioned the officers about their actions against John, yelling at them to let his brother go and using profanity. Carl kept approaching Luza and Campos who were struggling to move John and Leroy to their vehicle. When Defendant Officer Jason Briseno arrived, he was told by Campos to watch Carl because Carl kept approaching Luza and Campos as they dealt with John and Leroy. At this point, it appears that Defendant Officers David McElwain, Katie Allen, and other officers arrived to the scene. Briseno attempted to calm Carl down and keep him away from Luza and Campos, but Carl became angry at Briseno, cussing at him and assuming a fighting stance against Briseno. The Plaintiffs' complaint states that several unidentified Officers, including Briseno, "grabbed [Carl], threw him to the ground, choked him by the neck, lifting him off his feet, to near unconsciousness and handcuffed him." (*See* Compl. ¶ 23 [Docket Entry No. 1].) Defendants specifically deny this allegation. (Answer ¶ 23 [Docket Entry No. 4].) They claim that Carl's threatening actions forced them to take Carl to the ground and handcuff him. Based on the police reports and internal affairs reports, Briseno told Carl to turn around and place his hands behind his back. Carl said "no" and refused to comply. Briseno warned Carl to calm down and again turn around and place his hands behind his back to which Carl again refused. Briseno forced Carl to the ground, requiring the assistance of McElwain, Fuller, and another officer as Carl pushed, kicked, and tried to break free from Briseno. Allen ordered the family members to move back who screamed at the officers. While the officers struggled with Carl, John and Leroy still resisted and attempted to move back to the yard. Allen watched Leroy and John while Campos ran over to hold Carl's legs

3

until he was handcuffed. Luza moved in the direction of the incident with Carl, but Luza returned as the other officers had gained control of Carl.

Ms. Shaw claims that she and Lakisha were "attacked" inside the gate of their home. (Compl. ¶ 26.) Defendants state that Lakisha was yelling at officers and had to be pulled away from the scene. As the officers struggled with Carl, Shaw and Lakisha yelled and screamed at the officers. Fuller drew his baton and Shaw grabbed him telling him not to use his baton. Fuller put his baton away, ordered Shaw to move back, and told her to hold Lakisha back who was yelling at the officers. Allen moved in the direction of Allen who was screaming and cursing at the officers. According to police reports, Ms. Shaw grabbed Allen from behind, and Lakisha struck Allen. According to Lakisha, Allen rushed toward her and began to punch her with closed fists, forcing Lakisha to put up her hands in self-defense. Campos, Allen, and McElwain grabbed Lakisha and handcuffed her. Fuller pulled Ms. Shaw off Allen, handcuffed Shaw, and placed her under arrest.

Brenda Shaw was charged with Misdemeanor Interfering with the Duties of a Public Official, Lakisha McCalister was charged with Misdemeanor Interfering with the Duties of a Public Official and Felony Assault on a Public Official, and Carl McCalister was charged with Resisting Arrest. John was released at the scene.

**Procedural History**

Plaintiffs filed this suit on September 6, 2006, against the six named police officers of the San Antonio Police Department, individually and in concert with each other and Defendant City of San Antonio, for allegedly depriving Plaintiffs of their constitutional rights in violation of 42 U.S.C. §§ 1981, 1983, and 1985(3). Plaintiffs also claimed that the Officers' actions constituted violations of Plaintiffs' Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights under the U.S.

4

Constitution and that the Officers were liable for the intentional torts of assault and false imprisonment. They alleged alternatively that Defendant City of San Antonio was guilty of common law negligence, which proximately resulted in the injuries and damages sustained by Plaintiffs. (*See* Compl.) On April 19, 2007, this Court granted in part and denied in part the Defendants' motion to dismiss, reserving judgment on some claims until Plaintiffs filed a reply. (Order (Apr. 19, 2007) [Docket Entry No. 22].) Plaintiffs filed no response even though being ordered to do so by May 14, 2007. (*See id.*) This Order was vacated when the Court stayed the case pending resolution of parallel state criminal proceedings. (Order (May 17, 2007) [Docket Entry No. 30].)

On August 3, 2009, this Court granted Defendant City of San Antonio's motion for summary judgment. (Order (Aug. 3, 2009) [Docket Entry No. 62].) As a result, the city was dismissed from the case.

On the same day, the Court issued an order to show cause regarding claims against four officers (Jason J. Briseno, Gerald Fuller, David McElwain, and Ryan Luza) stating that Plaintiff was to explain by August 24, 2009, "why these claims should not be dismissed for want of prosecution and for failure to comply with [the Court's April 17, 2007, Order that required her to respond to the motion to dismiss by May 14, 2007]." (Order to Show Cause (Aug. 3, 2009) [Docket Entry No. 63].) Plaintiff, a pro se litigant, responded on August 21, 2009, with a four line statement, apologizing for the delay in responding to the summary judgment motion, but neglecting to address any of the claims against the four officers as outlined in the Court's order to show cause.

On August, 28, 2009, the remaining Defendants in the suit filed a motion for summary judgment and, alternatively, a motion to dismiss for want of prosecution. (*See* Def.s' Mot. for Summ. J. or in the Alternative Mot. to Dismiss for Want of Prosecution (Aug. 28, 2009 [Docket

5

Entry No. 69].) On September 17, 2009, beyond the deadline to respond to Defendants' motion for summary judgment, Plaintiffs filed a response to the motion. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. (Sept. 17, 2009) [Docket Entry No. 72].) Plaintiffs also filed a motion to vacate the court's order to show cause. (*See* Pl.s' Mot. to Vacate this Court's Aug. 3, 2009, Order (Sept. 17, 2009) [Docket Entry No. 71].)

Finding that the Court had vacated its previous show cause order, the Court vacated its August 3, 2009 Order to Show Cause and denied Defendants' motion to dismiss for want of prosecution. (Order (Oct. 13, 2009) [Docket Entry No. 77].) The Court granted Defendants' motion for summary judgment on Plaintiffs' section 1981 claims but denied, without prejudice, Defendants' motion for summary judgment on the remaining claims. (*Id.*)

The Court entered a Scheduling Order requiring Plaintiffs to file a Rule 7 Reply to Defendants' qualified immunity defense to Plaintiffs' section 1983 individual capacity claims and intentional tort claims no later than October 27, 2009. (Scheduling Order (Oct. 13, 2009) [Docket Entry No. 78].) Plaintiffs Brenda Shaw and Lakisha McCalister filed their Rule 7 Reply on October 29, 2009. (Rule 7 Reply (Oct. 29, 2009) [Docket Entry No. 79].) The Rule 7 Reply was not filed on behalf of Carl McCalister nor have subsequent filings been made on his behalf.

The remaining Defendants in this case, Katie Allen, Ryan Luza, Jason Briseno, David McElwain, Casey Campos, and Gerald Fuller, filed a motion for summary judgment on Brenda Shaw's and Lakisha McCalister's remaining claims for violations of section 1983, state law claims under the Texas Penal Code, and common law tort claims. (*See* Mot. for Summ. J. (Nov. 20, 2009) [Docket Entry No. 94] ("Mot.").) Plaintiffs Shaw and McCalister responded to the motion for summary judgment beyond the deadline. (*See* Resp. to Mot. for Summ. J. (Dec. 12, 2009) [Docket

6

Entry No. 25] ("Resp.").)  Plaintiffs also filed a motion for leave to file their late response on the same day they filed the response.  (*See* Mot. for Leave (Dec. 12, 2009) [Docket Entry No. 96].)  They filed a second motion for leave to file the late response to supplement their first motion and to exceed the page limit.  (*See* Am. Mot. for Leave (Dec. 18, 2009) [Docket Entry No. 99].)

**Motion for Leave**

Defendants filed their motion for summary judgment on November 20, 2009, which required Plaintiffs to respond on December 7, 2009.  *See* L.R. CV-7 (W.D. Tex.) (establishing deadline to respond to motions); FED. R. CIV. P. 6 (regarding calculation of days).  Plaintiffs filed their response on December 12, 2009.  They included a motion for leave to file the response beyond the deadline.  Counsel, Jason R. Epstein, states in the motion that he filed his response ten minutes beyond the deadline, that he took an exceedingly longer time to file the motion even though he expected to have completed it on time, and that the delay was based on his "attention to detail."  Recognizing that his motion was more than ten minutes beyond the deadline, Epstein filed a subsequent motion for leave stating that he focused on the deadline in the Federal Rules of Civil Procedure and not on the local rules.  Moreover, he notes that his response exceeds the page limit.

An existing order of the Court establishes that dispositive motions shall be no longer than thirty pages.  (*See* Scheduling Order (Jan. 8, 2007) [Docket Entry No. 12].)  Plaintiffs' motion is twenty-three pages.  Therefore, the Court dismisses their motion for leave to exceed the page limit as moot.

Defendants oppose Plaintiffs' motions for leave, stating "Plaintiffs' counsel's excuses simply do not support a finding of good cause."  (Def.s' Resp. to Pl.s' Am. Mot. for Leave (Dec. 31, 2009) [Docket Entry No. 103].)  In the interest of adjudicating this case on the merits, the Court GRANTS

7

Plaintiffs' motion for leave to file beyond the deadline.[2]  However, the Court takes note of Mr. Epstein's repeated failures to meet the deadlines of this Court.[3]

**Legal Standard**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party.  *Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  A fact is 'material' if its resolution in favor of one party might affect the outcome of the case.  *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts

---

[2]The Court notes that the affidavits in support of Plaintiffs' response are the same as the affidavits included with Plaintiffs' Rule 7 Reply.  Plaintiffs are not relying on statements or evidence in the affidavits that are not already before the Court.

[3]The Court ordered Epstein to file the requisite application to appear *pro hac vice* no later than September 28, 2009.  He filed the application on September 29, 2009.  The Court ordered that Plaintiffs provide a Rule 7 Reply to Defendants' claims of qualified immunity no later than October 27, 2009.  Epstein filed the response on October 29, 2009.  During the course of this case, Plaintiffs represented themselves pro se.  Given their status, the Court was inclined to provide them with leeway in their responses.  More is expected of counsel.  Mr. Epstein has failed to abide by the deadlines of the Court on nearly every item he has filed.  Moreover, the motions for leave that he files present the same excuses regarding counsel's "attention to detail" that forces him to miss the deadlines.

8

showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). The Court reviews all facts in the light most favorable to the non moving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009). However, "a summary assertion made in an affidavit is simply not enough proof to raise a genuine issue of material fact." *Id.* (citing *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993).

**Analysis**

Following the dismissal of parties from this suit and the Court's decision to grant summary judgment in favor of previous Defendants, the following claims remain against Defendants Katie Allen, Ryan Luza, Jason Briseno, David McElwain, Casey Campos, and Gerald Fuller: violations of state statutory law and common law and violations of 42 U.S.C. § 1983. Plaintiffs base their state statutory claim on a violation of the Texas Penal Code. In their original complaint, Shaw and McCalister stated claims for false imprisonment and asserted allegations that could be construed as assault and battery and false imprisonment. Although not specifically alleged in their complaint, Plaintiffs assert a claim for malicious prosecution in their Rule 7 Reply.

As a preliminary matter, Shaw and McCalister argue that the "law of the case" doctrine prevents the Court from addressing the arguments in Defendants' motion for summary judgment since they presented these arguments in their Motion for Summary Judgment or in the Alternative Motion to Dismiss for Want of Prosecution. (Resp. at 7–9.) These arguments are irrelevant to this matter. To rectify the procedural posture of this case in light of Plaintiffs' motion to vacate the show cause order and Plaintiffs' then-late response to the motion for summary judgment, the Court did not render a judgment on the merits of Defendants' motion. The Court denied the motion *without prejudice*. Therefore, Defendants were entitled to present their motion for summary judgment that

9

is the subject of this order.[4]

*A. State Law Claims*

*1. Plaintiffs' Common-Law Tort Claims are Barred*

Defendants argue that Plaintiffs are unable to state any state law intentional tort claim because the claims are barred as a matter of law. (Mot. at 9–11.) Under Texas law: "If a suit is filed . . . against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e). The Texas Supreme Court explained that this statute applies to all tort theories; both intentional and negligent. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) ("[A]ll tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106.").

Plaintiffs filed this suit against Defendants and the City of San Antonio. (*See* Compl.) The City of San Antonio moved to dismiss the lawsuit against itself and the remaining Defendants. (Mot. to Dismiss (Nov. 9, 2006) [Docket Entry No. 7].) After the Court ruled on the motion to dismiss, the Texas Supreme Court issued its opinion in *Mission Consolidated Independent School District v. Garcia*, in which the state supreme court interpreted the Texas Tort Claims Act. Based on that opinion, Plaintiffs' intentional tort claims cannot proceed against the remaining Defendants.

Shaw and McCalister argue that the Texas Supreme Court's ruling in *Mission* does not apply

---

[4]The Court notes that Plaintiffs are attempting to use procedure—albeit incorrectly—to preclude the Court from evaluating Defendants' motion on the merits. Such a harsh stance is surprising in light of Plaintiffs' inability to abide by the deadlines imposed by this Court. Such a strict adherence to procedure over substance would precluded the Court from granting Plaintiffs' multiple motions for leave of the Court to file late responses.

to this case because the Texas Supreme Court did not retroactively apply the ruling to this case and that a Fifth Circuit opinion should control. (Resp. at 4–6.) The general rule is that "[a] decision of the [Texas] Supreme Court operates retroactively unless th[e] Court exercises its discretion to modify that application." *Bowen v. Aetna Cas. and Sur. Co.*, 837 S.W.2d 99, 100 (Tex. 1992). Because the *Mission* opinion does not contain language indicating an intent to apply only prospectively, the general rule applies. Federal courts defer to state courts on interpretations of state law. *Cf. Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992) (stating that federal courts "look to final decisions of the highest court of the state" in determining issues of state law). Even though the Plaintiffs filed this suit before the Texas Supreme Court's decision in *Mission*, the decision controls since this case is still pending.

2. *Plaintiffs' Statutory Claims Based on the Texas Penal Code are not Actionable*

Plaintiffs allege violations of the Texas Penal Code. Specifically, Plaintiffs reference section 22.01 regarding assault, section 22.02 regarding unlawful restraint, section 39.04 for violations of the civil rights of a person in custody, and section 39.03 for official oppression. The Texas Penal Code "does not create private causes of action . . . ." *Aguilar v. Chastain*, 923 S.W.2d 740, 745 (Tex. App.—Tyler 1996, writ denied). Plaintiffs' claims asserted under the Texas Penal Code therefore fail as a matter of law.[5]

B. *Section 1983 Claims*

---

[5] Shaw and McCalister argue that a motion to dismiss would have been the appropriate method for the Defendants to counter their claims for violations of the Texas Penal Code and that failure to do so means that the Defendants accept the pleadings. Shaw and McCalister further impugn Defendants' reliance on footnotes to counter claims for battery, assault, false arrest, false imprisonment and malicious prosecution. Defendants' decision to challenge Plaintiffs' claims in a motion for summary judgment or in a footnote is irrelevant to whether or not Shaw and McCalister can pursue a claim under the Texas Penal Code as a matter of law.

The Defendants claim that they are entitled to qualified immunity. Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Flores v. City of Palacios*, 381 F.3d 391, 393–94 (5th Cir. 2004).

In reviewing a motion for summary judgment based on qualified immunity, a district court undertakes a two-step analysis. *Flores*, 381 F.3d at 395. First, the court must determine whether a statutory or constitutional right would have been violated on the facts alleged. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Aucoin v. Haney*, 306 F.3d 268, 272 (5th Cir. 2002). If no constitutional right would have been violated were the allegations established, the inquiry ends. *Saucier*, 533 U.S. at 201.

If a violation is properly alleged, the court proceeds to the second step, in which it determines whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores*, 381 F.3d at 395 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). A right is clearly established when its contours are sufficiently clear so that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Finally, if the law was clearly established at the time of the incident, the court must decide whether the defendant's conduct was objectively reasonable. *Aucoin*, 306 F.3d at 272. An official's conduct is objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution. *Hampton v. Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). Even if the government official's conduct violates

a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Hernandez ex. rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004).

In the summary-judgment context, a government official need only plead qualified immunity, which then shifts the burden to the plaintiff. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (citing *Michaelik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)). The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct. *Id.* In order to do so, the plaintiff may not simply rely on mere allegations in the pleadings, but must produce competent summary judgment evidence raising a genuine issue of material fact. *Morales v. Boyd*, 304 Fed. App'x 315 (5th Cir. 2008).

1. Fourth Amendment

   a. False Arrest/False Imprisonment

The Fourth Amendment prevents an arrest absent probable cause. *Daniel v. Ferguson*, 839 F.2d 1124, 1129 (5th Cir. 1988). A claim of false arrest or false imprisonment requires a showing of no probable cause. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001). "The Supreme Court has defined probable cause as the facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (internal quotation marks and citations omitted). "[T]here must not even 'arguably' be probable cause for the search and arrest for immunity to be lost." *Brown*, 243 F.3d at 190 (quoting *Hart v. O'Brien*, 127 F.3d 424, 444 (5th

13

Cir. 1997). Qualified immunity will apply if a reasonable officer could have concluded that there was probable cause upon the facts then available to him. *Id.*

The Defendant officers placed Shaw under arrest and charged her with Interference with Public Duties pursuant to section 38.15 of the Texas Penal Code. They placed Lakisha McCalister under arrest for assault on a public servant and resisting arrest pursuant to sections 22.01 and 38.03 of the Texas Penal Code. Based on the police reports, Carl McCalister was arguing with police and moving toward Luza and Campos as they took John and Leroy into custody. He challenged Briseno and verbally threatened him. Plaintiffs provide no summary judgment evidence to refute the events that involve Carl McCalister. The police reports also indicate that Brenda Shaw grabbed Allen as she approached Lakisha and that Lakisha struck Allen in the eye. While Lakisha McCalister declares that she never saw Shaw grab an officer, Shaw does not deny this claim in her affidavit. While Lakisha claims that Allen was punching her, other officers witnessing their altercation could have reason to believe that Lakisha had just assaulted the officer.[6]

Based on the accounts provided in the pleadings and the available evidence, it is evident that the officers faced a chaotic situation when John and Leroy were placed in handcuffs. Aside from the resistance that they exhibited, the police were forced to contend with Carl McCalister's threatening actions and interference as well as multiple family members yelling and screaming at the officers. Given the volatility of the situation and the resistance of some family members to the officers' commands to stand back, it is reasonable for officers to have placed Shaw and Lakisha

---

[6]Plaintiffs provide conclusory denials and repeatedly rely on the fact that the Court should ascertain the facts in a light favorable to the nonmoving party on summary judgment. However, Plaintiffs fail to provide sufficient summary judgment evidence or affidavits to challenge the facts presented by the Defendants, much less overcome the considerable hurdle required for a Plaintiff to refute a claim of qualified immunity.

McCalister under arrest when they physically engaged the officers. Based on the facts provided and even viewing them in a light favorable to the nonmoving parties, the officers had probable cause to arrest the Plaintiffs.

  *b. Excessive Force*

  To bring a section 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that she was seized. *See Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Next she must show that she suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). Again, Shaw and McCalister must produce competent summary judgment evidence to raise an issue of material fact.

  While Shaw and McCalister present numerous claims in their pleadings, they present brief, cursory, summary-judgment evidence in support of their claims. Lakisha McCalister's affidavit provides no reference to Officers Luza, Briseno, or Fuller. Moreover, the police reports of the incident do not show any contact between Luza, Briseno, or Fuller with McCalister. Consequently, McCalister cannot pursue her claims against these officers as she provides no evidence to create a genuine issue of material fact.

  According to McCalister, Allen approached her "with an angry and crazed look on her face, came rushing toward [her] from outside the fence into the fenced in area and began punching [her] with closed fists." McCalister Aff. ¶ 8. The police reports and internal affairs reports state that McCalister struck Allen. McCalister then declares that Officer McElwain, Campos, and Allen ran her "into the ground and jumped on [her] back." *Id.* ¶ 11. The police reports and internal affairs

reports state that McElwain and Campos aided Allen in subduing McCalister. Regardless as to whether McCalister or Allen struck first, McElwain and Campos witnessed an individual and an officer engaged in a confrontation and sought to subdue the suspect. McCalister states that the officers "jumped on her back" but she does not provide any indication that the actions the officers took against her were more than necessary to place her under arrest. Moreover, the testimony of Defendants' expert states that the officers acted within the scope of their employment and exercised their authority in a reasonable manner given the totality of the circumstances before them. McCalister presents no summary judgment evidence to refute this proposition. With no genuine issue of material fact as to the actions of McElwain and Campos, McCalister cannot pursue her claims against them.

As to McCalister's charge that Allen struck her in the face, McCalister's affidavit fails to allege facts sufficient to overcome Allen's claim for qualified immunity. McCalister's affidavit contains no description of any injuries she sustained. Even if the Court accepts her testimony in a light favorable to the Plaintiffs, there is no assertion as to what injury was sustained nor is there any declaration that the force used was objectively unreasonable. Given the commotion that ensued, it was likely that there was contact between the parties, however, McCalister's declarations fail to assert an injury from Allen's actions, even assuming that the events transpired as McCalister attests.

Plaintiff Brenda Shaw's affidavit does not mention Campos, Luza, Briseno, Allen, or McElwain. Consequently, she presents no declarations against these officers to create a genuine issue of material fact to pursue a claim for excessive force against them. Shaw provides a brief description of Fuller's actions. She states: "Officer Gerald Fuller was the officer who had my hands up behind my back twisting them for an extended period of time over one minute while I did not

struggle. Officer Fuller and another Officer then ran me into the ground after taking several steps forward." Shaw Aff. ¶¶ 7–8. Fuller admits taking Shaw into custody after she grabbed Allen. Brenda Shaw does not dispute that she grabbed Officer Allen. Fuller states that he placed her left arm behind her back as he handcuffed Shaw. Under the circumstances, with multiple individual's resisting arrest, a group of individual's yelling at the officers, and Shaw grabbing Allen in the volatile situation, it is expected that Fuller would place Shaw into custody by placing her arm behind her back. While she declares that she did not struggle and that he held her arm behind her back for over one minute, under the circumstances, holding an individual's arm behind their back after that person has just grabbed an officer is not objectively unreasonable. Moreover, it is unclear that Shaw's alleged injury rises above the level of a de minimis injury. While Shaw declares that Fuller twisted her arm, she does not declare whether this caused her any injury. *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (holding that "handcuffing too tightly, without more, does not amount to excessive force"). Furthermore, she does not allege that he twisted her arm with malice. Consequently, Brenda Shaw cannot pursue her claim against Fuller.

*2. Other Constitutional Bases*

Plaintiffs' complaint also claims that the Defendants deprived them of constitutional rights pursuant to the Fifth, Sixth, and Fourteenth Amendments. Actions by state actors do not result in violations of the Fifth Amendment, which applies to federal actors. *See Hill v. City of Seven Points*, 31 Fed. App'x 835, 2002 WL 243261, *13 n.4 (5th Cir. 2002) (unpublished). Here, the Defendants are police officers for the City of San Antonio, Texas; and therefore, state actors. As a result, Plaintiffs cannot pursue their claims against the Defendants for violations of the Fifth Amendment.

Plaintiffs also claim violations of the Sixth Amendment. The Sixth Amendment involves

a defendant's right to a speedy and public trial. *See* U.S. CONST., amend. 6. Defendants argue that none of the Plaintiffs' Sixth Amendment rights are implicated under the facts of this case and the Plaintiffs do not challenge this assertion. This case involves the circumstances surrounding the arrest of Shaw and McCalister and the events that occurred prior to their arrest. The facts of this case do not support a claim for a violation of the Sixth Amendment.

Plaintiffs likewise do not challenge or present any evidence to warrant a claim for a violation of the Fourteenth Amendment. The complaint arises from the events involving the arrest of Shaw and McCalister. Courts analyze claims of excessive force or the events surrounding an arrest under using the Fourth Amendment's "objective reasonableness" standard rather than a substantive due process standard. *See Graham*, 490 U.S. at 395. Consequently, Shaw and McCalister cannot proceed on their claim for a violation of the Fourteenth Amendment.

## Conclusion

Plaintiffs' motion for leave to file beyond the deadline is GRANTED while their motion for leave to exceed the page limit is DISMISSED AS MOOT. The Court hereby GRANTS Defendants' motion for summary judgment. Plaintiffs provide no summary judgment evidence to create a material issue of fact or overcome Defendants' claims of qualified immunity.

It is so ORDERED.

SIGNED this 5th day of January, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE